No. 25-1673

# IN THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

*In re: Clearview AI, Inc. Consumer Privacy Litigation*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division,
District Judge Sharon Johnson Coleman
No. 1:21-cv-00135

**BRIEF FOR AMICI CURIAE VERMONT, ARIZONA, CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, HAWAII, IOWA, KANSAS, MAINE, MARYLAND, MASSACHUSETTS, MICHIGAN, MINNESOTA, NEBRASKA, NEVADA, NEW JERSEY, NEW YORK, NORTH CAROLINA, OREGON, RHODE ISLAND, TENNESSEE, UTAH, WEST VIRGINIA, AND THE DISTRICT OF COLUMBIA IN SUPPORT OF OBJECTORS-APPELLANTS ROBERT WEISSMAN AND RICK CLAYPOOL**

CHARITY R. CLARK
    *Attorney General of Vermont*
SARAH L. J. ACEVES
    *Assistant Attorney General*
109 State Street
Montpelier, VT 05609
(802) 828-3170
sarah.aceves@vermont.gov

(*Additional counsel on signature page*)

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-1673

Short Caption: In re: Clearview AI, Inc. Consumer Privacy Litigation

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Amici States

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Sarah L. J. Aceves

(3) If the party, amicus or intervenor is a corporation:

  i) Identify all its parent corporations, if any; and

  N/A

  ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

  N/A

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Sarah L. J. Aceves    Date: 7/14/2025

Attorney's Printed Name: Sarah L. J. Aceves

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  Yes [X]  No [ ]

Address: 109 State Street, Montpelier, VT 05609

Phone Number: 802-828-3170    Fax Number:

E-Mail Address: sarah.aceves@vermont.gov

rev. 12/19 AK

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................. ii

INTERESTS OF AMICI ........................................................................................1

SUMMARY OF THE ARGUMENT .....................................................................2

ARGUMENT ..........................................................................................................3

    I.    As Approved By The District Court, The Settlement Agreement Does Not Do Enough To Protect Consumers' Right To Privacy In Their Biometric Data .............................................3

    II.    The Highly Speculative Nature Of The Monetary Relief Under The Settlement Renders It Unfair As A Matter Of Law. ..................................................................................................8

CONCLUSION ..................................................................................................... 11

# **TABLE OF AUTHORITIES**

**Cases**                                                               **Page(s)**

*Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617 (7th Cir. 2020)…………….....6

*Fraley v. Facebook, Inc.*,
    966 F. Supp. 2d 939 (N.D. Cal. 2013)…………………………………………….9

*In re Clearview AI, Inc., Consumer Priv. Litig.*,
    No. 21-CV-00135, 2025 WL 1371330 (N.D. Ill. May 12, 2025)…………….3, 8

*In re Facebook Biometric Info. Priv. Litig.*,
    No. 3:15-cv-03747, No. 468 (9th Cir.)……………………………………………..9

*In re Subway Footlong Sandwich Mktg. & Sales Pracs. Litig.*,
    869 F.3d 551 (7th Cir. 2017)………………………………………………….7, 8

*In re TikTok, Inc., Consumer Priv. Litig.*,
    617 F. Supp. 3d 904 (N.D. Ill. 2022)……………………………………………9

*In re Tiktok Inc., Consumer Priv. Litig.*,
    No. 22-2682, 2022 WL 19079999 (7th Cir. Oct. 12, 2022)…………………….9

*In re Vizio, Inc., Consumer Priv. Litig.*,
    No. 8:16-ml-02693-JLS, 2019 WL 12966638 (C.D. Cal. July 31, 2019)………9

*In re Walgreen Co. S'holder Litig.*,
    832 F.3d 718 (7th Cir. 2016)……………………………………………………..8

*Patel v. Facebook Inc.*,
    290 F. Supp. 3d 948 (N.D. Cal. 2018)…………………………………………4, 5

*Patel v. Facebook, Inc.*,
    932 F.3d 1264 (9th Cir. 2019)…………………………………………...5, 6

*Remijas v. Neiman Marcus Grp., LLC*,
    341 F. Supp. 3d 823 (N.D. Ill. 2018)……………………………………..8

*Sherman v. Brandt Indus. USA Ltd.*,
   500 F. Supp. 3d 728 (C.D. Ill. 2020)……………………………………….6

**Statutes**

28 U.S.C. § 1715 ...............................................................................................1

**Other Authorities**

S. REP. 109-14, 2005 U.S.C.C.A.N. 3 ...................................................................1

# **INTERESTS OF AMICI**

Amici States are a broad, bipartisan coalition of states consisting of the States of Vermont, Arizona, California, Colorado, Connecticut, Delaware, Hawaii, Iowa, Kansas, Maine, Maryland, Massachusetts, Michigan, Minnesota, Nebraska, Nevada, New Jersey, New York, North Carolina, Oregon, Rhode Island, Tennessee, Utah, West Virginia, and the District of Columbia. Through their respective Attorneys General, Amici States respectfully submit this brief in support of Objectors-Appellants Weissman and Claypool.

The Attorneys General are their respective states' chief law enforcement officers. They have two interests here. First, in their roles as chief law enforcement officers, the Attorneys General have a responsibility to protect consumers. Second, they have a responsibility to protect consumer class members under the Class Action Fairness Act ("CAFA"), which gives state Attorneys General a role in the class action settlement approval process. *See* 28 U.S.C. § 1715; *see also* S. REP. 109-14, 2005 U.S.C.C.A.N. 3, 6 (requirement "that notice of class action settlements be sent to appropriate state and federal officials" exists "so that they may voice concerns if they believe that the class action settlement is not in the best interest of their citizens."); *id*. at 34 ("notifying appropriate state and federal officials . . . will provide a check against inequitable settlements"; "[n]otice will also deter collusion between class counsel and defendants to craft settlements that do not benefit the

injured parties."). Amici States submit this brief to further these interests.

## SUMMARY OF THE ARGUMENT

The Amici States, and the millions of Americans they represent, strongly urge this Court to vacate or modify the District Court's decision approving the settlement. Failure to do so will leave millions of Americans' biometric data exposed, and fail to achieve the actual purpose of this litigation—to protect Americans' privacy.

As facial recognition technology becomes increasingly embedded into everyday life, privacy concerns are compounded. The need to balance the benefits of such technology with its harms is vital. Unlike a driver's license or a password, an individual's biometrics cannot be changed. Once compromised, fingerprints, DNA, and facial maps are compromised forever. Amici States—and consumers within those states—are therefore deeply concerned that Clearview AI, Inc. ("Clearview") has collected billions of images without their consent for use in a searchable facial recognition database. Yet, under the Settlement, many instances of a person's appearance on the internet—be it in the audience of a rally, a mugshot, dining at an intimate restaurant, a reflection in a mirror, or cheering their child at a Little League game—will continue to be maintained, and potentially exploited, by Clearview without any additional protections. Worse, the approved settlement sanctions the unlawful conduct that gave rise to this lawsuit and requires class members to release all claims against Clearview nationwide (including in the Amici States) in exchange

2

for what amounts to an uncertain speculative monetary benefit.

Amici States have an interest in ensuring that consumer class-action settlements are fair to consumers. This settlement would profoundly impact nearly every American's ability to protect their privacy. This Court should vacate or modify the District Court's decision approving the settlement.

# ARGUMENT

## I. As approved by the District Court, the settlement agreement does not do enough to protect consumers' right to privacy in their biometric data.

The District Court did not impose injunctive relief for the nationwide class because, in its view, plaintiffs' unjust enrichment and declaratory judgment claims were "unbound by any state's law" and formed a weak "basis for relief, let alone nationwide relief." *In re Clearview AI, Inc., Consumer Priv. Litig.,* No. 21-CV-00135, 2025 WL 1371330, at *13 (N.D. Ill. May 12, 2025). Essentially, the District Court did not require nationwide class injunctive relief because it did not believe there was directly applicable state law under which to do so. But that is simply not the case.

Well-established common-law principles support an individual's right to privacy – including their right to privacy regarding their biometric identifiers. Those principles weigh strongly in favor of granting injunctive relief to the nationwide class as recourse for Clearview's unlawful conduct. Because the

3

settlement and release encompass all claims that were brought or could have been brought – including a claim for invasion of privacy –the District Court should have considered these well-established principles in determining whether the settlement is fair.

*Patel v. Facebook* illustrates how violations of the right to privacy have long been actionable at common law. In *Patel*, Illinois Facebook users brought a class-action lawsuit against Facebook alleging that Facebook's use of facial recognition technology through its Tag Suggestions feature violated Illinois' Biometric Information Privacy Act ("BIPA"). *Patel v. Facebook Inc*., 290 F. Supp. 3d 948 (N.D. Cal. 2018). Facebook argued that the plaintiffs lacked standing under Article III of the United States Constitution because their claims were based solely on Facebook's failure to comply with BIPA and therefore, they did not suffer actual damages sufficient to confer standing.

The District Court rejected Facebook's argument and found that the class had alleged a concrete and actual injury in fact sufficient to confer Article III standing and certified the class pursuant to F.R.C.P. 23(b)(3). The District Court observed:

> The Illinois legislature's considered judgments in enacting BIPA are also well grounded in a long tradition of claims actionable in privacy law. The common law and the literal understanding of privacy encompass the individual's control of information concerning his or her person. Violations of the right to privacy have long been actionable at common law. Actions to remedy defendants' invasions of privacy,

4

    intrusion upon seclusion, and nuisance have long been heard by American courts, and the right of privacy is recognized by most states.

*Id.* at 954 (citation and quotation omitted).

Facebook appealed, arguing that its failure to comply with Illinois statutory requirements with respect to the collection of biometric identifiers is merely a "procedural violation of BIPA rather than injury to a concrete interest, and therefore plaintiffs failed to allege that they suffered an injury-in-fact that is sufficiently concrete for purposes of standing." *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1271 (9th Cir. 2019).

The Ninth Circuit rejected that argument, finding that violations of BIPA cause a concrete injury to individuals' privacy interests as recognized under common law, as opposed to a mere procedural statutory violation. *Id.* at 1274. More importantly, the Ninth Circuit recognized that individuals have a right of privacy with respect to their biometric identifiers, and as such, "the capture and use of a person's biometric information invades concrete [privacy] interests." *Id.* at 1273.

The Court further explained that in enacting BIPA, the Illinois General Assembly wished to "enhance Illinois's limited State law regulating the collection, use, safeguarding, and storage of biometrics." *Id*. at 1269. In other words, the Illinois General Assembly, recognizing the privacy risks associated with facial recognition technology, enacted BIPA to strengthen the protection of biometric

5

information – a protection that already exists under the common law right to privacy.

The parties settled the case before trial, where Facebook agreed and the court approved to pay $650 million to the class, implementation of meaningful changes to the company's use of facial recognition technology, and deleting the face templates of any class members who had not been active on Facebook for three years.[1]

Courts, including this one, have adopted *Patel's* holding that BIPA was passed to strengthen the protections that already exist under the common law right to privacy. *See, e.g., Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 622 (7th Cir. 2020), as amended on denial of reh'g and reh'g en banc (June 30, 2020) (recognizing the *Patel* court's finding that the BIPA provisions at issue were intended to protect an individual's concrete interests in privacy, not merely procedural rights) (internal quotations and citations omitted); *Sherman v. Brandt Indus. USA Ltd.*, 500 F. Supp. 3d 728, 734 (C.D. Ill. 2020) (explaining that the *Patel* court "found that an invasion of an individual's biometric privacy rights has a close relationship to the basis for privacy lawsuits in American or English courts"

---

[1] A copy of the settlement agreement entitled "Amended Stipulation of Class Action Settlement" is available at https://www.facebookbipaclassaction.com/media/2963194/2020-0722_d468_notice_of_amended_stip_of_class_action_settlement.pdf (last visited on July 25, 2023).

6

and that the "improper collection and retention of biometric data implicates an individual's control of information concerning his or her person" (internal citations omitted)).

These cases illustrate that a company's utilization of biometric identifiers without consent implicate longstanding and well-recognized privacy interests for which individuals have had a cause of action under common law. *Patel,* 932 F.3d at 1273 ("we conclude that the development of a face template using facial-recognition technology without consent (as alleged here) invades an individual's private affairs and concrete interests. *Similar conduct is actionable at common law*") (emphasis added).

Here, there is no question that consumers have an actionable privacy right implicated by Clearview's conduct. Notably, the Third Amended Complaint repeatedly alleges that monetary damages would be inadequate and demands permanent injunctive relief to restrain ongoing violations of the laws of several states and prevent future viewing and use of class members' biometric information. *See* Compl. at ¶¶ 64(h), 81, 89, 96, 103, 110, 117, 125, 155, 176, 185, 190-192, 199; *see also* Prayer for Relief at ¶ d. Therefore, the nationwide class is entitled receive recourse for Clearview's unlawful invasion of their right to privacy. The District Court's failure to impose any meaningful injunctive relief for the nationwide class renders the Settlement unfair. *See In re Subway Footlong Sandwich Mktg. & Sales*

*Pracs. Litig.*, 869 F.3d 551 (7th Cir. 2017) (finding injunctive relief "utterly worthless" where Subway consumers were in the same position after settlement that they were in before regarding the varying length of Subway subs); *In re Walgreen Co. S'holder Litig.*, 832 F.3d 718, 724 (7th Cir. 2016) (finding settlement agreement's merger disclosures to be of little value to class members); *Remijas v. Neiman Marcus Grp., LLC,* 341 F. Supp. 3d 823, 828–29 (N.D. Ill. 2018) (finding that Neuman Marcus' changed business practices couldn't be characterized as injunctive relief because they didn't provide any new benefit to the class). Amici States therefore recommend that if the Court does not enjoin Clearview from engaging in its current business practices, the Court at a minimum modify the settlement so that Clearview must implement a universal opt-out portal for the nationwide class.

II. **The highly speculative nature of the monetary relief under the settlement renders it unfair as a matter of law.**

The District Court approved the monetary component of the settlement but recognized that equity- or security-based relief is "novel in the context of past BIPA settlements." *In re Clearview AI, Inc.,* 2025 WL 1371330, at *14. It also explained that "the decision to premise monetary relief on a 23% equity stake in Clearview was driven by the practical realities of the case" or in other words, Clearview's "precarious financial position" as described in the third-party mediator report. *Id.* Finally, the District Court stated that establishment of a settlement

8

master will somehow ensure adequate monetary relief for the settlement class. *Id.* at *15.

As Amici States explained to the District Court, such a highly speculative settlement is not fair, reasonable, or adequate relief for class members. Not only does it require class members to have a stake in the very company that harmed them, but it also amounts to unfairness as a matter of law when compared to similar Seventh Circuit BIPA cases. *See, e.g., In re TikTok, Inc., Consumer Priv. Litig.,* 617 F. Supp. 3d 904, 918 (N.D. Ill. 2022), *appeal dismissed sub nom; In re Tiktok Inc., Consumer Priv. Litig.*, No. 22-2682, 2022 WL 19079999 (7th Cir. Oct. 12, 2022) ($27.19 for nationwide class members and $163.13 for Illinois subclass members); *In re Facebook Biometric Info. Priv. Litig.,* No. 3:15-cv-03747, No. 468 (9th Cir.), available at https://www.facebookbipaclassaction.com/media/2963194/2020-07-22_d468_notice_of_amended_stip_of_class_action_settlement.pdf ($93.14 per class member); *Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939, 944 (N.D. Cal. 2013) ($15 per claim in case alleging misappropriation of users' likenesses), *aff'd sub nom. Fraley v. Batman*, 638 F. App'x 594 (9th Cir. 2016); *In re Vizio, Inc., Consumer Priv. Litig.*, No. 8:16-ml-02693-JLS, 2019 WL 12966638, at *4 (C.D. Cal. July 31, 2019) (Video Privacy Protection Act settlement providing $16.50 per claim).

The District Court's approval of the settlement stands in stark contrast to the meaningful monetary relief provided in these similar class action settlements in privacy cases, all of which guaranteed a defined monetary amount for class members. Here, class members might receive no compensation at all in exchange for releasing all claims against Clearview. Amici States are not aware of another class action settlement like this where the monetary relief is completely unknown, may or may not subsequently be worth something, and gives class members an interest in the very company that harmed them. This is the height of unfairness under Seventh Circuit law.

In addition, given the highly speculative nature of the monetary relief, Plaintiffs should have provided greater evidence of why this structure, without any guaranteed relief, was necessary. The mediator's report did not suggest that Clearview is unable to pay *any* guaranteed monetary compensation to class members. Rather, the parties and the mediator "considered the inability of Clearview . . . to pay any judgment in the tens, never mind the hundreds of millions of dollars." (Dkt. 578, Ex. B.) Given that the District Court acknowledged Clearview was valued at approximately $225 million in early 2024 (*In re Clearview AI, Inc.*, 2025 WL 1371330, at *15), the company may have been able to pay some guaranteed compensation to class members. Yet, the District Court approved the settlement without Clearview providing evidence to support the

10

absence of any guaranteed compensation. No financial statements or other documents showing Clearview's current or predicted financial position are included; neither are declarations by relevant witnesses such as an independent accountant. Class members are entitled to fair, guaranteed monetary compensation separate from the future success of any IPO or other triggering event. The District Court's approval of the monetary component of the settlement should therefore be vacated.

## **CONCLUSION**

This Court should vacate or modify the order of the District Court as explained herein.

Respectfully submitted,

CHARITY R. CLARK
Attorney General of Vermont

/s/ *Sarah L. J. Aceves*
Sarah L. J. Aceves
Assistant Attorney General
109 State Street
Montpelier, VT 05609
(802) 828-3170
sarah.aceves@vermont.gov

KRIS MAYES
   *Attorney General*
   *State of Arizona*
2005 N Central Avenue
Phoenix, AZ 85004

PHILIP J. WEISER
   *Attorney General*
   *State of Colorado*
Colorado Department of Law
1300 Broadway, 10th Floor
Denver, CO 80203

KATHLEEN JENNINGS
   *Attorney General*
   *State of Delaware*
Carvel State Building
820 N. French St.
Wilmington, DE 19801

ANNE E. LOPEZ
   *Attorney General*
   *State of Hawai'i*
425 Queen Street
Honolulu, HI 96813

KRIS KOBACH
   *Attorney General*
   *State of Kansas*
120 SW 10th Ave., 2nd Floor
Topeka, KS 66612

ANTHONY G. BROWN
   *Attorney General*
   *State of Maryland*
200 St. Paul Place
Baltimore, MD 21202

DANA NESSEL
   *Attorney General*
   *State of Michigan*
P.O. Box 30212
Lansing, Michigan 48909

ROB BONTA
   *Attorney General*
   *State of California*
455 Golden Gate Ave 11th Floor
San Francisco, CA 94102

WILLIAM TONG
   *Attorney General*
   *State of Connecticut*
165 Capitol Avenue
Hartford, CT 06106

BRIAN L. SCHWALB
   *Attorney General*
   *District of Columbia*
400 6th Street, NW, Suite 8100
Washington, D.C. 20001

BRENNA BIRD
   *Attorney General*
   *State of Iowa*
Hoover State Office Building
1305 E. Walnut Street
Des Moines, IA 50319

AARON M. FREY
   *Attorney General*
   *State of Maine*
6 State House Station
Augusta, Maine 04333

ANDREA JOY CAMPBELL
   *Attorney General*
   *Commonwealth of Massachusetts*
One Ashburton Place
Boston, MA 02108

KEITH ELLISON
   *Attorney General*
   *State of Minnesota*
102 State Capitol
75 Rev. Dr. Martin Luther King Jr. Blvd.
St. Paul, MN 55155

AARON D. FORD
   *Attorney General*
   *State of Nevada*
100 North Carson Street
Carson City, NV 89701

LETITIA JAMES
   *Attorney General*
   *State of New York*
The Capitol
Albany NY 12224-0341

ELLEN F. ROSENBLUM
   *Attorney General*
   *State of Oregon*
1162 Court Street NE
Salem, OR 97301

JONATHAN SKRMETTI
   *Attorney General & Reporter*
   *State of Tennessee*
P.O. Box 20207
Nashville, TN 37202-0207

JOHN B. MCCUSKEY
   *Attorney General*
   *State of West Virginia*
State Capitol Complex, Bldg. 1, Rm E-26
1900 Kanawha Blvd. E
Charleston, WV 25305

MIKE HILGERS
   *Attorney General*
   *State of Nebraska*
2115 State Capitol
PO Box 98920
Lincoln, NE 68509

MATTHEW J. PLATIKIN
   *Attorney General*
   *State of New Jersey*
Richard J. Hughes Justice Complex
25 Market Street
Trenton, NJ 08625

JEFF JACKSON
   *Attorney General*
   *State of North Carolina*
114 West Edenton Street
Raleigh, NC 27603

PETER F. NERONHA
   *Attorney General*
   *State of Rhode Island*
150 South Main Street
Providence, RI 02903

DEREK BROWN
   *Attorney General*
   *State of Utah*
350 N State Street, Suite 230
Utah Capitol Building
Salt Lake City, UT  84114

✔ **CERTIFICATE OF SERVICE**
**Certificate of Service When All Case Participants Are CM/ECF Participants**

I hereby certify that on __July 14, 2025__, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/ Sarah L. J. Aceves

☐ **CERTIFICATE OF SERVICE**
**Certificate of Service When Not All Case Participants Are CM/ECF Participants**

I hereby certify that on _____, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I further certify that some of the participants in the case are not CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third-party commercial carrier for delivery within 3 calendar days, to the following non-CM/ECF participants:

| counsel / party: | address: |
|---|---|
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

s/_____