# LYNCH THOMPSON LLP

**James L. Thompson**
312-445-4623
jthompson@lynchthompson.com

150 South Wacker Drive, Suite 2550
Chicago, Illinois 60606
**312-346-1600**
312-667-9231 (fax)

Daniel Lynch
Amy J. Kanarowski
Steven P. Gomberg
Mindy S. Schwab
Stephen G. Mrowiec
Betsy Pisabaj

January 23, 2026

**VIA ECF**
Christopher G. Conway
Clerk of the Court
United States Court of Appeals for the Seventh Circuit
Dirksen United States Courthouse
219 South Dearborn Street
Chicago, IL 60604

    Re:    No. 2501673, In re: Clearview AI, Inc. Consumer Privacy Litigation

Dear Mr. Conway:

Pursuant to Appellate Rule 28(j), Appellees cite the decision in *State of Vermont v. Clearview AI, Inc.,* No. 25-CV-01789, 2025 Vt. Super. LEXIS 708 (Superior Court of VT, December 15, 2025). A copy is attached.

The Court in *Vermont v. Clearview* granted Clearview's motion to dismiss, finding no personal jurisdiction. In its decision, the court addressed issues relevant to the present appeal.

Appellants argue that the settlement agreement was deficient because it lacks injunctive relief and releases claims that might entitle the nationwide class to injunctive relief. Appellants' Brief at 23. Appellants reference "constitutional and common law right-to-privacy claims." *Id.* at 22-27. Amici likewise argue for injunctive relief based on state, common law claims. Amici Brief at 3-8.

Appellees note that the Class Action Complaint asserts only unjust enrichment claims on behalf of the Nationwide Class, not other constitutional or common law claims. Moreover, no such claims could support nationwide class relief. Appellees' Brief. at 29-35. In the absence of legislative enactments targeting facial recognition technology, plaintiffs have limited ability to enforce generally applicable state laws against companies like Clearview. Indeed, a prior court rejected the State of Vermont's effort to enforce Vermont laws against Clearview. *Id.* at 30-31.

In *Vermont v. Clearview*, a second court rejected Vermont-law claims against Clearview, on jurisdictional grounds. The plaintiff conceded that there is no general jurisdiction, and the court found no basis for specific jurisdiction. Ex. A at 3-6. Clearview lacks sufficient contacts with Vermont; unlike other social media companies and consumer-centric websites, Clearview does not contract with, interact with, or cultivate any relationship with the people whose data is collected. That the Clearview database may contain data relating to a Vermont resident "is not a jurisdictionally significant contact between Clearview and the State of Vermont." *Id.* at 4.

Finally, like the District Court here, the court observed: "[T]he State's concerns appear to be more grounded in policy and practice, which suggest a legislative or administrative response but do not precipitate the type of limited judicial scrutiny available to state courts." Ex. A, n. 5.

Respectfully submitted,

By: /s/ *James Thompson*
James Thompson
Daniel Lynch
Lynch Thompson, LLP
150 S. Wacker Dr., Ste 2550
Chicago, IL 60606
312-346-1600
*Counsel for Clearview Appellees*

Jon Loevy
Michael Kanovitz
Tom Hanson
Loevy & Loevy
311 N. Aberdeen St. Chicago, IL 60607
312-243-5900
*Counsel for Appellees Sanders, Dache, Gould, and Orlando*

Rachel Schaller
Blank Rome LLP
444 W. Lake Street, Suite 1650
Chicago, Illinois 60606
(312) 776-2600
*Counsel for Macy's Appellees*

**CERTIFICATE OF COMPLIANCE**

I certify that the body of the above letter contains 342 words, and is therefore in compliance with the 350 word limit imposed by Federal Rule of Appellate Procedure 28(j).

/s/ *James Thompson*
James Thompson

**CERTIFICATE OF SERVICE**

I certify that on January 23, 2026, the foregoing letter citing supplemental authority was filed with the electronic filing system of the Seventh Circuit Court of Appeals, pursuant to which a copy will be served on all counsel of record.

/s/ *James Thompson*
James Thompson

Exhibit A

No *Shepard's* Signal™
As of: January 20, 2026 6:53 PM Z

# *State v. Clearview AI, Inc.*

Superior Court of Vermont, Washington Unit, Civil Division

December 12, 2025, Decided; December 15, 2025, Filed

Case No. 25-CV-01789

**Reporter**
2025 Vt. Super. LEXIS 708 *; 2025 LX 538245

State of Vermont v. **Clearview AI**, Inc.

**Notice:** THE TEXT OF THIS VERMONT TRIAL COURT OPINION IS UNOFFICIAL. IT HAS BEEN REFORMATTED FROM THE ORIGINAL. THE ACCURACY OF THE TEXT AND THE ACCOMPANYING DATA INCLUDED IN THE VERMONT TRIAL COURT OPINION DATABASE IS NOT GUARANTEED.

## Core Terms

personal jurisdiction, forum state, database, target, motion to dismiss, broker

**Judges:** [*1] Daniel Richardson, Superior Court Judge.

**Opinion by:** Daniel Richardson

## Opinion

**ENTRY REGARDING MOTION**

*Decision on Clearview's Motion (#1) to Dismiss*

This case presents the Court with a new, but fundamentally basic, question about what authority a state court has to bring a non-resident business into its jurisdiction when the business is not located within the state, not doing business with Vermonters in the state, and not reaching out to or targeting specific residents.

I. *Plaintiff's Allegations*

Plaintiff, the State of Vermont, has charged Defendant **Clearview AI**, Inc., with one count of violating *Vermont's Consumer Protection Act (CPA), 9 V.S.A. §§ 2451-2466c*. Based on the State's filings, the Court understands the following.

Clearview employs a series of search programs to sweep publicly available troves on the internet to collect images of peoples' faces and related metadata. From this raw and publicly available data, Clearview extracts and collects

biometric data for each image,[1] which it sorts and stores in a proprietary database. From this database, Clearview can match a comparator photograph (a "probe picture") to an individual profile.[2] Clearview offers this service to its paid licensees. The State contends that Clearview's extensive database includes data related **[*2]** to Vermont residents who did not consent to be part of Clearview's database, and Clearview offers no way for Vermont residents to be removed from the database. The State asserts that Clearview's conduct violates the CPA in five ways by:

> a. Collecting, storing, processing, and extracting Vermonters' (including minors) facial biometric information from Vermonters' photographs posted online without their knowledge or consent, or without the consent of parents or guardians;
> b. Invading the privacy of Vermonters;
> c. Exposing Vermonters' sensitive personal data to potential theft and fraud by bad actors;
> d. Violating Vermonters' civil rights by chilling their freedoms of assembly and political expression; and
> e. Violating Vermonters' rights to the display and distribution of their photographs and other property rights as they choose.

Complaint ¶ 64 (footnote omitted).

## II. *Defendant's Motion to Dismiss for Lack of Personal Jurisdiction*

Clearview has filed a [Rule 12(b)(2)](#) motion to dismiss for lack of personal jurisdiction.[3] In making this motion, Clearview argues that both specific and general personal jurisdiction are lacking in this case. The difference between these two concepts has been described as follows: **[*3]**

> Specific jurisdiction exists when "a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum"; a court's general jurisdiction, on the other hand, is based on the defendant's general business contacts with the forum state and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts. Because general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's "continuous and systematic general business contacts."

[Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567-68 (2d Cir. 1996)](#) (citations omitted); see also [Canaday v. Anthem Companies, Inc., 9 F.4th 392, 400 (6th Cir. 2021)](#) (the contacts relevant to specific personal jurisdiction are claim-specific).

The State concedes that there is no basis for general jurisdiction over Clearview. Instead, it argues for specific jurisdiction. In determining specific personal jurisdiction, the Vermont Supreme Court has explained that:

> Vermont's long-arm statute, [12 V.S.A. § 855](#), confers jurisdiction to the full extent allowed by the United States Constitution. Our inquiry focuses on whether the defendant has sufficient contacts with Vermont that maintaining **[*4]** the lawsuit here does not "offend traditional notions of fair play and substantial justice." The central question in determining whether specific jurisdiction may be exercised is whether the defendant has purposefully availed itself of the privilege of acting in the forum state. This requirement "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." Put another way, the

---

[1] The Court understands the term "biometric data" from the State's complaint to include distinct physical characteristics that can be used to identify and distinguish individuals. The parties have suggested, and certainly part of Clearview A.I. boast is, that these biometric data points are collectively as unique as fingerprints.

[2] In this respect, Clearview is not creating new information or piercing some inherent privacy to reveal hidden information but is simply using the amplified sorting and cognition power offered by artificial intelligence to organize and match the information in a stunningly precise manner that nevertheless has the ultimate effect of eradicating a component of privacy the ability of an individual to fade into the crowd.

[3] Both parties go to some lengths to detail their prior litigation history both in federal court and in a different unit of Vermont superior court. Neither pieces of those litigation histories are relevant to the pending motion.

purposeful-availment requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'"

N. Sec. Ins. Co. v. Mitec Elecs., Ltd., 2008 VT 96, ¶ 14, 184 Vt. 303, 965 A.2d 447 (citation omitted).

Procedurally, when a party challenges personal jurisdiction, the ultimate burden falls on the plaintiff to establish the grounds for jurisdiction, which must be based on specific facts in the record and go beyond the pleadings into a showing affirmative proof. Schwartz v. Frankenhoff, 169 Vt. 287, 295, 733 A.2d 74 (1999) (citing Godino v. Cleanthes, 163 Vt. 237, 239, 656 A.2d 991 (1995)). As the Vermont Supreme Court has recently explained:

> If . . . a court chooses to rule on a motion to dismiss for lack of personal [*5] jurisdiction on the basis of affidavits alone, the party opposing [the] motion need make only a prima facie showing of jurisdiction, or, in other words, demonstrate facts which would support a finding of jurisdiction. The nonmoving party's prima facie showing must go beyond the pleadings and rely upon specific facts set forth in the record. In assessing the submitted materials, the [trial] court eschews fact finding and simply accepts properly supported proffers of evidence as true and rules on the jurisdictional question as a matter of law."

State v. Atl. Richfield Co., 201 Vt. 342, 2016 VT 22, ¶ 9, 142 A.3d 215 (citing Godino, 163 Vt. at 239; Schwartz, 169 Vt. at 295) (internal quotations and citations omitted); see also N. Sec. Ins. Co., 2008 VT 96, ¶ 15 ("[W]here no evidentiary hearing is held on the jurisdictional issue, 'the Court must consider the pleadings and affidavits in a light most favorable to the plaintiff.'" (citation omitted)); Fox v. Fox, 197 Vt. 466, 480, 106 A.3d 919 (2014) (noting that plaintiff bears the burden of proving that the court has subject matter jurisdiction over the defendant).

The largely uncontested record here shows that Clearview conducts no substantial business in Vermont and never has. It does not have any Vermont customers using its database, and there is no allegation that Clearview's data-collection activity bears any connection specific [*6] to Vermont whatsoever. Clearview's activities are distinguishable from social media companies and other consumer-centric websites. Clearview does not contract with, interact with, or cultivate any sort of relationship whatsoever with any of the people represented by the data collected. Nor is there any credible allegation that Clearview's data collection activity has ever occurred in Vermont.

Under the Atl. Richfield Co standard, the Court accepts that some of the data Clearview hoovers and scrapes from publicly available resources is likely related to someone who is a current resident of Vermont. The Court also accepts as equally plausible that, because of this process, some Vermonters' data has been added to Clearview's database. At the same time, the record does not support any allegation that Clearview in any way targets Vermont residents or any Vermont marketplace in its data-collection or resulting business activities. Furthermore, to the extent Clearview may have data relating to any specific Vermont resident, this connection is entirely dependent on the individual's temporal residence and would effectively sever the moment that individual relocated out of state.[4]

Given these facts available on [*7] the surface, one has to squint to see how Clearview possibly might have purposefully availed itself of the privilege of doing business in Vermont. See State v. Meta Platforms, Inc., 2025 VT 51, ¶ 23 ("The focus of the analysis is whether the defendant 'purposefully availed [itself] of the privilege of conducting business' in the forum state by 'direct[ing] its business activities' there." (citation omitted)). As the personal jurisdiction inquiry goes, Clearview has an inauspicious lack of contact with Vermont.

Against that backdrop, the State asserts that Clearview has four demonstrable contacts with Vermont that, together (it argues), establish minimum contacts for personal jurisdiction purposes: (1) Clearview has collected information related to Vermont residents; (2) one of its licensees, the U.S. Department of Homeland Security, has an office in Vermont; (3) it once offered a free trial to Vermont-based Northfield Savings Bank (which apparently did not

---

[4] Conversely, it is not clear what interest the State would have over an individual whose information was obtained by Clearview while they lived out of state if that person later became a Vermont resident.

become a licensee); and (4) in 2020, it registered as a data broker in Vermont's Data Broker Registry maintained by the Secretary of State pursuant to 9 V.S.A. § 2466.

Throughout its opposition filing, it is clear that the principal "contact" relied upon by the State is the first, that some data **[*8]** collected by Clearview from some source somewhere is associated with (among others) Vermont residents. But this "contact" has no appreciable jurisdictional significance. Apart from the issues noted above, due process analysis focuses on the defendant's—not the plaintiff's or a third party's—relationship with the forum state. As explained in Walden v. Fiore, 571 U.S. 277, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014):

> First, the [defendant's] relationship [with the forum state] must arise out of contacts that the "defendant himself" creates with the forum State. Due process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties. We have consistently rejected attempts to satisfy the defendant-focused "minimum contacts" inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State. . . . Put simply, however significant the plaintiff's contacts with the forum may be, those contacts cannot be "decisive in determining whether the defendant's due process rights are violated."
>
> Second, our "minimum contacts" analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there. **[*9]** Accordingly, we have upheld the assertion of jurisdiction over defendants who have purposefully "reach[ed] out beyond" their State and into another by, for example, entering a contractual relationship that "envisioned continuing and wide-reaching contacts" in the forum State, or by circulating magazines to "deliberately exploi[t]" a market in the forum State. . . .
> But the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him.

Id. at 284-85 (citations omitted). The inclusion of data that relates to a Vermont resident in Clearview's database does not, on its own, show that Clearview reached into Vermont in any way. To the extent that the inclusion might be considered to be *some* kind of contact between Clearview and that person, it is not a jurisdictionally significant contact between Clearview and the State of Vermont.[5]

Similarly, the fact that a third party, the Department of Homeland Security, is a licensee of Clearview's, and the Department has an office in Vermont, is virtually irrelevant. That contact between Clearview and the Department **[*10]** simply is not a jurisdictionally significant contact. The Department's contacts with Vermont are not a substitute for Clearview's. Moreover, the State has not cited to any part of the record to show that the Federal Government's use is tied to its Vermont locations or even that the Vermont offices are active Clearview users. Given the scope and nature of the State's claims, which are based primarily on Clearview's information gathering and retention methods, this is more of a suggestion of a connection, which lacks the type of nexus between the Federal Government's presence in the state and the activities that the State seeks to address. Meta Platforms, Inc., 2025 VT 51, at ¶ 15 (noting that special jurisdiction "must arise out of or relate to the defendant's contacts with the forum.") (quoting Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct., 592 U.S. 351, 358, 359, 141 S. Ct. 1017, 209 L. Ed. 2d 225 (2021)).

As well, the fact that Clearview once offered a free trial to a Vermont-located business (that apparently did not become a customer) lacks any significance for jurisdiction. This fact might be modest evidence that Clearview once

---

[5] The fundamental factual problems with this point of contact go deeper than this analysis indicates. The information that Clearview is collecting does not strictly "belong" to the individuals. Clearview harvests images and information that have been released into the public sphere of the internet. From social media posts to on-line news articles to staff pages on company sites to personal blogs, we have collectively made our information and images widely and freely available. Nothing in this decision is intended to lessen the dangers cited by the State in its complaint, but it is to recognize that Clearview is not engaged in the type of actions that constitute the state-specific engagement necessary for jurisdiction. In this respect, the State's concerns appear to be more grounded in policy and practice, which suggest a legislative or administrative response but do not precipitate the type of limited judicial scrutiny available to state courts under 12 V.S.A. § 855.

sought to do business in Vermont, but it more persuasively shows that such plans never came to pass. That is precisely the sort of "fortuitous, attenuated or random" contact that does not give rise to jurisdiction. [*11] N. Aircraft, Inc. v. Reed, 154 Vt. 36, 41-42, 572 A.2d 1382 (1990) ("Under this 'purposeful availment' requirement, a defendant cannot be summoned into a jurisdiction merely as a result of fortuitous, attenuated or random contacts.").

The same may be said of the allegation that Clearview registered as a data broker in Vermont's Data Broker Registry pursuant to 9 V.S.A. § 2466. The State argues, "Clearview's registration as a data broker in Vermont is a formal recognition that Clearview's business model intentionally targets Vermonters' personal information, confirming that the collection of such data is deliberate and systematic." State's Opposition at 28 (filed Aug. 29, 2025). In other words, the State suggests that the registration is an admission that Clearview targets the Vermont market. However, the State's own exhibit 4 to its opposition filing (testimony of a Clearview representative) demonstrates precisely the opposite. Clearview registered under the Vermont statute based on its understanding of what the Vermont statute required, not because it secretly conducts business in Vermont in some way not disclosed above.

Whatever reason may have motivated Clearview to register, the fact of the registration itself does not constitute any activity in the state and [*12] is simply too attenuated to support an assertion of personal jurisdiction by a Vermont court over Clearview's out-of-state activities.

Finally, to the extent that the State relies on cases in which social media and internet-based businesses are found to be subject to personal jurisdiction in states where they have no physical presence, the cases simply are not analogous. One need look no further than the Vermont Supreme Court's recent decision in State v. Meta Platforms, Inc., 2025 VT 51, to see the remarkable difference from this case. In that case, Meta (owner of social media site Instagram) argued that it did not "target" Vermont, even if Vermont residents chose to use its website. The Court rejected the argument out of hand, highlighting Meta's extensive contacts with Vermont:

> [T]he facts pled indicate that Meta operates a nationwide social-media application used by a nationwide audience, including Vermont. Additionally, over 29,000 Vermont teens use Instagram daily and upwards of 40,000 Vermont teens used Instagram monthly, and Meta regularly engages with these users by entering into contractual agreements in which they collect a variety of personal information. Further, Meta has specifically studied Vermont teen Instagram [*13] users to increase their engagement and concurrently its revenue by selling more advertisement space to Vermont businesses that target these teens. As such, . . . Meta "continuously and deliberately exploit[s] the [Vermont] market" and must "reasonably anticipate being haled into court" here. As part of its business model, Meta purposefully avails itself of Vermont. The fact that Instagram is available everywhere and not only in Vermont is inapposite under [prevailing federal case law].

Id. ¶ 20 (citations and footnote omitted). Given the claims in that case and Meta's extensive contacts with Vermont, the determination that Vermont had jurisdiction over Meta does not appear to have been a close call. However, the sort of contacts described above are exactly the type that are conspicuously absent in the present case.

In this respect, the State's final argument, that the four points of alleged contact with Vermont weave together to form jurisdiction, does not hold up to either individual scrutiny of the contacts or in their collective analysis. Simply put, the State's four points of contact do not make something greater than their sum. As with the *Dalal* case cited by Clearview, the loose [*14] confederation of contacts cannot be bootstrapped into the type of meaningful and purposeful contact that due process requires for a state court to assert jurisdiction over an out-of-state entity operating outside of its jurisdiction. Dalal v. **Clearview AI**, Inc., No. 24-10380-SDW-AME at 15-17, 2025 U.S. Dist. LEXIS 118674 (D. N.J. May 1, 2025) (Mag. Report and Recommendation), adopted by the Dist. Ct., 2025 U.S. Dist. LEXIS 117436 (June 20, 2025), Exh. 18, 19 to Clearview's Motion to Dismiss (filed June 30, 2025) (no personal jurisdiction over Clearview in New Jersey). The Court finds that the New Jersey District Court's Magistrate's findings and conclusions are persuasive and consistent with Vermont law and personal jurisdiction precedent.

In summation, Clearview's motion to dismiss required the State to make a prima facie showing of personal jurisdiction. Under Godino and its line of cases, the State had to point to allegations or evidence that, if ultimately found by the court, would support jurisdiction over Clearview in Vermont state court. Godino, 163 Vt. at 239. The

State has not met this burden, and the record indicates that Clearview's contacts with the state have not been substantial or sufficient to support a finding of jurisdiction.

### ORDER

For the foregoing reasons, Clearview's motion to dismiss is **Granted**. The present matter is **Dismissed** based on the lack **[*15]** of personal jurisdiction. *V.R.C.P. 12(b)(2)*.

Electronically signed on 12/12/2025 5:58 PM pursuant to *V.R.E.F. 9(d)*

/s/ Daniel Richardson

Daniel Richardson

Superior Court Judge

---

**End of Document**